TIMOTHY COURCHAINE
United States Attorney
District of Arizona
MARCUS SHAND
Pennsylvania State Bar No. 323052
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone:  602-514-7500
Email: Marcus.Shand@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-24-00482-001-PHX-SHD |
| Plaintiff, | |
| vs. | **UNITED STATES RESPONSE TO DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT** |
| Martin Eulalio Molina Lopez, | |
| Defendant. | |

The United States of America responds to the Defendant Martin Eulalio MOLINA LOPEZ's objections to the Presentence Report (Docs. 48 and 52) and requests that the Court overrule his objections. Defendant should be held responsible for all the illegally purchased firearms during the course of the investigation as relevant conduct under the Sentencing Guidelines.  Defendant should additionally receive the four-level adjustment to the base offense level for his role in the offense as prescribed in the PSR. Additionally, the PSR writer correctly calculated Defendant's base offense level as 20 because he possessed at least one firearm at the time of his arrest that could accept a large capacity (more than 15 rounds) magazine. Finally, The United States recommends Defendant be sentenced to 70 months imprisonment followed by three years of supervised release.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      FACTUAL BACKGROUND**

The offense conduct contained in the PSR is an accurate and thorough explanation of the offense conduct for which the defendant should be held accountable. The government provides the following as a brief background of the investigation and interdiction that gave rise to the indictment.

*A.  ATF Initial Investigation*

On February 14, 2024, ATF received multiple purchase forms relating to a series of suspicious firearm purchases made by Siana Ramirez. Agents noted that Ramirez had purchased thirteen firearms over an eight-day period. Eleven of these firearms were of a nearly identical make and model AK-47 style rifles and pistols. Agents contacted one of the FFLs where Ramirez had purchased two Glock handguns on separate days. A review of the footage revealed that Ramirez arrived in the parking lot at the same time as a Black Silverado driven by a Hispanic male identified as Martin Eulalio MOLINA LOPEZ. Agents were able to observe the AZ registration numbers on Ramirez's vehicle and MOLINA LOPEZ's vehicle. Agents discovered that both vehicles were captured on plate readers traveling in tandem on the same dates that Ramirez made her suspicious purchases.

Based on the travel patterns observed from plate readers and Port of Entry records, Agents determined that MOLINA LOPEZ had been traveling from Mexico to Phoenix and back to Mexico on the same weekends that Ramirez was making her suspicious purchases. Agents continued to investigate Ramirez's firearm purchase history and discovered that she had purchased a total of eighteen AK-47 style firearms and two Glock pistols within a seventeen-day period.

*B.  Surveillance*

Agents sought and obtained tracking warrants for both Ramirez and MOLINA LOPEZ's vehicles.  On February 23, 2024, MOLINA LOPEZ, his wife Ana Tanairi LARA PEREZ, and their two children applied for entry into the United States in the Black Silverado. All occupants were admitted to the United States on B1/B2 non-immigrant

visas. Agents placed a tracker on the vehicle at that time. The tracker indicated that MOLINA LOPEZ and LARA PEREZ traveled directly to a hotel in Phoenix, Arizona.

*C. February 24, 2024 Gun Show*

The next morning, on February 24, 2024, the tracker alerted Agents that the Black Silverado traveled to the Crossroads of the West gun show at the Arizona State Fairgrounds in Phoenix, Arizona. Agents established surveillance at the gun show and were able to observe MOLINA LOPEZ meeting with suspected straw purchasers. Agents observed MOLINA LOPEZ hand what appeared to be money to one of the suspected straw purchasers. This individual went to the State 48 FFL booth and purchased nine Anderson Manufacturing AM-15 model AR-15 lower receivers. The lowers were placed in a black bag with a white circle. Agents reviewed surveillance footage and observed the straw purchaser hand MOLINA LOPEZ the black bag containing the lower receivers. In exchange, MOLINA LOPEZ appeared to again hand the straw purchaser money. This exchange occurred within minutes of the purchase.

Agents later observed MOLINA LOPEZ purchase nine AR-15 upper receiver kits from another FFL.[1] Agents confirmed that the upper receiver parts kits were compatible with the Anderson Manufacturing lower receivers, and when combined, would constitute a complete functional AR-15 rifle. Agents observed MOLINA LOPEZ and LARA PEREZ return to their vehicle and place the parts kits and black bag containing the lower receivers in the Black Silverado. The two then returned to the gun show and engaged in conversations with various prospective straw purchasers.

At approximately 4:30 p.m., Agents observed MOLINA LOPEZ and LARA PEREZ speaking with three individuals on the gun show sales floor. At approximately 5 p.m., Agents observed the same three individuals and MOLINA LOPEZ in the parking lot

---

[1] AR-15 upper receivers are not regulated by the ATF. The lower receivers are the portion of an AR-15 that are defined as a firearm, and as such, are regulated by the ATF and require a NICS background check to purchase.

walking toward a Tan Chevy Silverado. At the same time LARA PEREZ retrieved the Black Silverado and drove over to the Tan Tahoe. Agents observed LARA PEREZ pick up gun boxes and place them in the Black Silverado, while MOLINA LOPEZ handed money to the three individuals. After the exchange, both vehicles parted ways.

At approximately 5:39 p.m., Agents and assisting law enforcement officers conducted a vehicle stop on the Black Silverado based on probable cause that MOLINA LOPEZ and LARA PEREZ were illegally in possession of firearms. A search of LARA PEREZ revealed several bundles of United States currency concealed on her person. Agents decided not to immediately search the Black Silverado. The next day, Agents obtained a vehicle search warrant to search the Silverado. The search revealed, in relevant part, sixteen AR-15 lower receivers, sixteen AR-15 upper receiver kits, one AK-47 style pistol, and various AR-15 tools and parts.

*D.* Post-*Miranda Interview*

Agents arrested MOLINA LOPEZ and LARA PEREZ on the scene and obtained a federal Complaint (Doc. 1) on February 26, 2024. MOLINA LOPEZ provided the following post-*Miranda* statements. MOLINA LOPEZ stated that he was very scared because his 13-year-old son was being held by a group of individuals in Mexico. MOLINA LOPEZ indicated that his son had been taken by force weeks ago. MOLINA LOPEZ then asked to use the restroom. Agents, concerned for the safety of his child spoke with LARA PEREZ, who stated she had seen her sone the day prior and that MOLINA LOPEZ's statements were false. A search of MOLINA LOPEZ's wallet indicated that he is a police officer in Sonora, Mexico.

E. Procedural Posture

On March 19, 2024, a grand jury indicted both defendants on two counts for their illegal possession and transfer of firearms. (Doc. 12). On March 6, 2025, MOLINA LOPEZ entered a plea of guilty pursuant to a plea agreement. (Doc. 43). The plea agreement provides for a sentencing cap at the high-end of the applicable sentencing range as calculated under U.S.S.G. § 1B1.1(a). (Doc. 38). In exchange, the government will dismiss

Count 1 of the indictment upon imposition of the sentence. Additionally, the government agrees not to prosecute Defendant for any offenses committed by Defendant, and known by the United States, in connection with Defendant's firearm trafficking activities from January 1, 2024 to February 24, 2024. Defendant is now before the court for sentencing. The government recommends a low-end sentence of 63 months.

## II.    Defendant's First PSR Objection (Number of Firearms)

Defendant objects to the calculation of relevant conduct made in the Presentence Report. Defendant argues he should not be held accountable for 38 firearms. (Doc 48). Based on the application of relevant conduct, however, Defendant's view of the firearms attributable to him is too narrow. The United States agrees with Probation that Defendant's offense level should be calculated based on the firearms purchased on his behalf by Siana Ramirez and the firearms found in his possession at the time his arrest.

### A.  Relevant Conduct

A "defendant is accountable for all quantities of contraband with which he was *directly involved* and, in the case of a jointly undertaken activity, all reasonably foreseeable quantities of contraband that were *within the scope of the criminal activity that he jointly undertook.*" *United States v. Palafox–Mazon*, 198 F.3d 1182, 1186 (9th Cir.2000) (quoting U.S.S.G. § 1B1.3 cmt. n. 2) (internal quotation marks omitted).

#### i.    Acts or Omission by Defendant

Subsection (a)(1)(A) of the United States Sentencing Guidelines holds a defendant accountable for "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(A).

#### ii.    Jointly Undertaken Criminal Activity

Additionally, Subsection (a)(1)(B) of the United States Sentencing Guidelines provides:

> In the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others,

whether or not charged as a conspiracy), all acts and omissions of others that were –

    i.      Within the scope of the jointly undertaken criminal activity

    ii.     In furtherance of that criminal activity, and

    iii.    Reasonably foreseeable in connection with that criminal activity;

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

U.S.S.G. § 1B1.3(a)(1)(B).

The guidelines provide that "a jointly undertaken criminal activity," is "a criminal plan, scheme, endeavor, or enterprise undertaken by defendant in concert with others, whether or not charged as a conspiracy." U.S.S.G. § 1B1.3, nt. 3. "In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the criminal activity the particular defendant agreed to jointly undertake." U.S.S.G. § 1B1.3, nt. 3(B). "In doing so, the Court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others." U.S.S.G. § 1B1.3, nt. 3(B). Then the Court determines "if the conduct (acts and omissions) of others was in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3, nt. 3(C). Lastly, the court determines if "the conduct (acts and omissions) of others that was within the scope of, the jointly undertaken criminal activity was reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3, nt. 3(D). The government is required to prove the approximate quantity by a preponderance of the evidence. *United States v. August*, 86 F.3d 151, 154 (9th Cir.1996).

### B. Total Number of Firearms

On February 3, 2024, Siana Ramirez purchased eleven (11) AK-47 style firearms at a gun show. License plate readers indicated that MOLINA LOPEZ's truck was present in the United States from February 3 to February 4, 2024, and had traveled on I-10 in a pattern consistent with traveling to Phoenix from Mexico. On February 10, 2024, Siana Ramirez

purchased a Glock pistol and an AK-47 style firearm. On February 11, 2024, she again purchased a Glock and an AK-47 rifle. A review of surveillance footage and license plate readers placed MOLINA LOPEZ's truck in the gun store parking lot and in the gun store with Siana Ramirez as she purchased the firearms. On February 17, 2024, Siana Ramirez purchased three (3) AK-47 style firearms. On February 18, 2024, Siana Ramirez purchased two (2) more AK-47 firearms. MOLINA LOPEZ's truck was captured on surveillance footage and license plate readers in the area of the gun store where Siana Ramirez had purchased the firearms on February 17, 2024. On February 18, 2024, MOLINA LOPEZ's truck was photographed entering Mexico from the United States. Agents interviewed Siana Ramirez on March 14, 2024. Siana Ramirez stated that MOLINA LOPEZ approached her and another individual at a gun show offering to pay $400 per firearm straw purchased. Ramirez stated that the firearms she purchased at the gun show on February 3, 2024 and the firearms she purchased on February 10 and 11, 2024 were on behalf of MOLINA LOPEZ. She stated she was paid $5,000 for all the firearms she straw-purchased for MOLINA LOPEZ. Based on the foregoing, MOLINA LOPEZ should be held accountable for the twenty (20) firearms purchased on his behalf.

Further, Defendant should be held accountable for the eighteen (18) firearms found his possession at the time his arrest. Thus, the total firearms involved in Defendant's offense conduct was 38. Under USSG § 2K2.1(b)(1)(C), six levels are added the base offense level.

Lastly, it should be noted that while the government stipulated that it would not prosecute Defendant for any offenses committed by Defendant, and known by the United States, in connection with Defendant's firearm trafficking activities from January 1 to February 24, 2024. This stipulation does not pertain to or bar the court from considering Defendant's relevant conduct under USSG §1B1.3.

### III. Defendant's Second PSR Objection (Aggravating Role)

Defendant objects to the four-level offense level increase under USSG §3B1.1(a). Defendant argues that his offense of conviction relates only to his illegal possession of

firearms. This argument fails to recognize the breadth of relevant conduct to be considered by the sentencing court under USSG §1B1.3, as described above. However, the government argues that Defendant acted as a manager or supervisor rather than an organizer or leader, and is therefore subject to a three-level increase rather than a four-level increase.

USSG §1B1.3 prescribes, in part, that based on the defendant's role in the offense, an increase of four, three, or two is warranted dependent on whether the defendant's was an organizer or leader (+4), or a manager or supervisor (+3). To be eligible for either increase, the criminal activity must involve five or more participants. If less than five participants were involved in the criminal activity USSG §1B1.3 states two level increase is required. Pursuant to USSG §3B1.1, comment. (n.1) and (n.2), a participant is a person who is criminally responsible for the commission of the offense, but need not have been convicted and to qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants.

Here, the participants in MOLINA LOPEZ's criminal activity included himself, Siana Ramirez, Jose Emmanuel Aguilar-Guillen, Kevin David Espinoza Duarte, Angel Rochin, and Ana Tanairi Lara Perez. Siana Ramirez, as explained above, purchased numerous firearms for MOLINA LOPEZ. Ramirez stated that Jose Emmanuel Aguilar-Guillen acted as an intermediary between MOLINA LOPEZ and Ramirez. Aguilar-Guillen observed accompanying Siana Ramirez and MOLINA LOPEZ in the gun store during the February 10 and February 11, 2024 straw purchases. Kevin David Espinoza Duarte and Angel Rochin both purchased the firearms that were subsequently found in MOLINA LOPEZ's possession for MOLINA LOPEZ on February 24, 2024. These purchases were observed by agents and captured on gun show surveillance. Thus, Defendant is eligible for either the four or three level increase under aggravating role.

MOLINA LOPEZ recruited, directed, and provided money to the aforementioned straw-purchasers in order to obtain firearms he could not legally possess or purchase. The evidence indicates that MOLINA LOPEZ acted as a middleman between the end recipients

of the firearms and the straw-purchasers. Lara Perez indicated that she and MOLINA LOPEZ had been themselves been recruited to obtain these firearms on behalf of another. Accordingly, the government does not seek to hold MOLINA LOPEZ responsible as a leader of the entire organization, of which, the government surmises is significantly larger than the six individuals listed above. Although MOLINA LOPEZ exhibited some degree of decision making on behalf of the criminal organization because he provided funds and directed straw purchasers as to which firearms to purchase, he undoubtedly reported to the individual(s) who recruited him.

### IV. Defendant's Third PSR Objection (Large Capacity Magazine)

Defendant objects to the base offense level as calculated under USSG § 2K2.1(a)(4)(B) on the argument the defendant did not possess a semiautomatic firearm capable of accepting a large capacity magazine at the time of his prohibited possession. The government disagrees.

The evidence plainly demonstrates that at the time of Defendant's arrest he was found in possession of a total of eighteen (18) firearms. Of the eighteen firearms two (2) were AR-10 .308 model lower receivers and fifteen (15) were AR-15 lower receivers. The AR-15 receivers were accompanied by all the parts needed assemble a complete rifle or pistol, sixteen (16) AMEND 2 30-round AR-15 magazines, and significantly, an armorer's wrench. The AR-10 and AR-15 are both semi-automatic and have standard magazine capacities of twenty (20) and thirty (30) rounds, respectively. Additionally, Defendant was in possession of a Pioneer Arms Hellpup AK-style pistol chambered in 7.62x39mm. The standard capacity magazines, which are included in the factory packaging, is thirty (30) rounds.

Defendant argues that because the AR-15 lower receivers were not fully assembled and were therefore not capable of accepting the thirty (30) round magazines. Defendant further provides that he was not in possession of the tools required to assemble. A firearm under USSG § 2K2.1 is given the definition as provided under 18 U.S.C. § 921(a)(3), in that, the term "firearm" means (A) any weapon (including a starter gun) which will or is

designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device.

Here, the AR-10 and AR-15 receivers are defined as firearms. They are capable of and designed to accept large capacity magazines. At the time of the offense, sixteen (16) thirty (30) round magazines were found with the firearms in the cab of MOLINA LOPEZ's four-door pick-up truck. Although Defendant seeks to circumvent liability on the technicality that he had not yet assembled firearms, however, USSG § 2K2.1(a)(4)(B) does not require the firearm to be fully assembled. Rather, the guidelines require only that the firearm be semi-automatic and *capable* of accepting a large capacity magazine.

To the extent an argument persists that the magazines were not in close proximity to the firearms is refuted by Attachment C to Defendant's Second Objection to the Presentence Investigation Report. (Doc. 52). Attachment C, pages 6 and 7, show the AMEND 2 labeled box containing the thirty round AR-15 magazines directly next to three lower receiver boxes. Finally, the Pioneer Arm Hellpup AK-47 seized from MOLINA LOPEZ's truck contained two (2) thirty (30) round magazines.

In sum, all the firearms seized from Defendant following his arrest were designed to and capable of accepting magazines with a capacity of more than fifteen (15) rounds. Thus, the PSR properly calculated Defendant's base offense level under USSG § 2K2.1(a)(4)(B) as 20.

## V.    GUIDELINE CALCULATIONS

The Sentencing Guidelines range is the "starting point and the initial benchmark" for all sentencing proceedings and should be "kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (citations omitted). The Sentencing Guidelines range is not presumed to be reasonable, but instead is only one of the § 3553(a) factors to be considered by the Court. *Id*.

Probation correctly calculates Defendant's base offense level beginning at offense level 20. The government applies a three-increase under USSG § 3B1(b) for Defendant's

role as a supervisor. Probation properly applies a six-level increase as Defendant is accountable for 25+ firearms. Probation properly reduced the offense level by three for Defendant's acceptance of responsibility. Probation correctly finds that Defendant's total criminal history score is 0 and places Defendant in criminal history category I. The government's total offense level is 26 and with a criminal history category I, the final applicable guideline range is 63 to 78 months.

## VI. RECOMMENDATION

The United States recommends Defendant be sentenced to 63 months in the Bureau of Prisons to be followed by three years of supervised release. The recommended sentence recognizes the serious and dangerous nature and circumstances the offense. Additionally, Defendant's history and characteristics militate in favor of a significant sentence.

Regarding Defendant's history and characteristics, he is a 33-year-old retired police officer from Hermosillo, Mexico. Defendant retired from the police force in Mexico in 2021 after suffering a gunshot wound likely inflicted by an individual armed with an illegally possessed firearm. He has no prior convictions in the United States. At the time of the offense conduct, Defendant was present in the United States on a travel visa without permission to possess or purchase firearms. He brought his wife and two of his young children with him to commit the offense. As a result of his actions, his two children were temporarily placed in the custody of the State.

As a prior law enforcement officer who has personally experienced gun violence, Defendant should have recognized the serious and dangerous nature of his offense conduct. He repeatedly traveled to the United States to recruit others to illegally purchase firearms. His intent was to provide these firearms to unidentified individuals. His attempt to circumvent the laws of the United States by purchasing large quantities of disassembled firearms indicates an additional level of pre-meditation and deception that requires a significant punishment.

The government recognizes that the requested sentence is a significant first sentence for any defendant to receive. However, the facts and circumstances underlying this offense

necessitate a sentence that provides for respect for the law and general and specific deterrence.

**VII.   CONCLUSION**

For the above reasons, the United States requests a sentence of 63 months to be followed by three years of supervised release.

Respectfully submitted this 18th day of May, 2024.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/ Marcus Shand*
MARCUS SHAND
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Brandon Cotto, Attorney for Defendant.

*s/Marcus Shand*
U.S. Attorney's Office